## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                Plaintiff,<br>  vs.<br><br>BYRON  WILLIAMS,<br>LATONYA  STUCKEY,<br>KELVIN  WASHINGTON,<br>RODERICK  WILLIAMS,<br>MARIE INEZ  HASAN-LOMAX,<br>**TANYA E. CHAISON** and<br>PAULA MARIE ROBERDS,<br><br>                Defendants. | 3:05-cr-00076–04-RRB-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION  TO  SUPPRESS<br>STATEMENTS**<br><br>(Docket No. 158) |

       Defendant **Tanya Chaison** moves to suppress statements taken from her by law enforcement officers on January 27, 2006. Docket No. 158. The motion is opposed by the government. Docket No. 197. An evidentiary hearing was

conducted on February 27, 2006.  Upon due consideration of the evidence adduced and arguments of counsel **the magistrate judge recommends that the motion to suppress be DENIED.**

### Findings of Fact

On January 27, 2006 about 10:00 a.m. at the State Probation Office Tanya Chaison was arrested by DEA Agent Mark Schmidt.  The warrant charged her with Maintaining a Drug Involved Premises in violation of 21 U.S.C. 856(a)(1) & (b), which carried a maximum penalty of 20 years and a $500,000 fine.  Chaison was taken into a back room and subjected to a pat-down search by a female officer.  She was handcuffed behind her back.  SA Schmidt identified himself and displayed his credentials. SA Schmidt was assisted by Detective Gordon Dorr, APD, who was there primarily as a witness.  The officers were dressed in plain clothes and carried concealed weapons.  Chaison appeared calm, coherent and curious about the federal arrest.

SA Schmidt transported Chaison to the DEA office at 1630 E. Tudor Road for processing (photographing, fingerprinting and identification).  Chaison was taken into an interrogation room on the second floor and her handcuffs were removed.  SA Schmidt and Detective Dorr placed their guns in a gun locker out of Chaison's sight.  The interview room has no telephone.   Chaison was given a copy

of the arrest warrant and the federal indictment and she appeared to read them. Chaison looked up and began talking.

SA Schmidt read Chaison the warnings contained on a DEA-13A card as follows: "Before we ask you any questions, you must understand: – you have the right to remain silent. – anything you say can be used against you in court. – you have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning. – if you cannot afford a lawyer, one will be appointed for you before any questioning if you wish." Agent Schmidt then asked Chaison if she understood those rights and she indicated that she did. He asked her if she was willing to answer some questions and she stated she was. Chaison appeared to have no problem understanding the officers nor they understanding her.

The questioning began about 20 - 30 minutes after her arrest and lasted for about 45 minutes to an hour. At no time did Chaison state that she did not understand what was going on or that she did not want to talk to the officers. The officers did not tell Chaison whether or not they were armed nor did she inquire. The interview was not recorded.

During the interview Chaison brought up the fact that she had children. She asked how the day would go and indicated that she needed to meet her children later in the day. SA Schmidt told her that whether they could see the magistrate that day depended on the court availability.

SA Schmidt asked Chaison if she would cooperate and she said she would. The officers made no promises or threats in that regard. The DEA agent told her that it was better to tell the truth and cooperate from the beginning, and if she did he would let the prosecutor know and the judge would learn about it from the prosecutor.

There is no evidence that the officers delayed the processing or interrogation conditioned on whether Chaison appeared to be cooperating. The officers did not threaten to leave the room if she was not cooperative. SA Schmidt told Chaison that she was not at the center of the investigation but she was a significant person in the group. The agent told her that he thought they were working on getting Williams and other people higher in the chain, and Williams was going to trial. SA Schmidt told Chaison they considered her a significant individual in the group and wanted her cooperation. At one point Chaison asked if she could go back to work and was told that was up to the judge.

During the interview Chaison explained where she was employed, and where she had been living including the address described in the indictment. In response to her question about being able to return to work, SA Schmidt advised her that it would be up to the judge. The officers informed Chaison that if they perceived that she was lying they would take her on to the magistrate. Throughout the interview, the officers never threatened to cease their questioning based upon

Chaison's responses. Throughout the interview Chaison did not claim to be innocent.

Defective Dorr told Chaison that she could be charged with more involvement as the investigation continued and she might face more charges. However, the relative seriousness of additional charges was not discussed in the interview. SA Schmidt took notes and afterwards prepared a written report. Near the end of the interview Chaison "teared up" but quickly regained her composure. She was allowed restroom breaks and offered water during the interview.

At the request of defense counsel the court took judicial notice that the white pages of the *ACS Telephone Book for 2004-2005* contains a listing for the DEA office with a telephone number but no address.

### Discussion and Application of the Law

The motion to suppress and supporting memorandum filed by Chaison argue that the defendant's statements must be suppressed because they were involuntary and obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Before a defendant's inculpatory statements are admissible in evidence, the defendant's "waiver of Miranda rights must be voluntary, knowing and intelligent." United States v. Binder, 769 F.2d 595, 599 (9th Cir. 1985). The government bears the burden of proving voluntariness by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972). A valid Miranda waiver depends on the totality

of the circumstances including the background, experience and conduct of the defendant. The court also determines whether the statements were obtained by physical or psychological coercion or by improper inducement such that the suspect's will was overborne. United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

The defendant was fully advised of her rights prior to her voluntarily answering questions by the officers. I conclude that the prosecution has met its burden of proving that Chaison knowingly and intelligently waived her Miranda rights. The evidence does not support the defendant's argument of direct or implied coercion by the agents. Unlike Tingle, supra, relied upon by Chaison, she was not misled regarding the potential sentence she faced nor the probable consequences of refusing to be interrogated. In Tingle, the court held that the defendant was subjected to psychological coercion based on several factors not present in the instant case. The agents interrogating Tingle told her that she faced a penalty of up to forty years when in fact she faced a lower sentence. The agents mentioned Tingle's son for no good reason. In soliciting Tingle's confession the agent recited a virtual litany of maximum penalties for crimes of which she was suspected and expressly stated that she would not see her two year old child "for a while," warned her that she had "a lot at stake," referring specifically to her child, and told her that if she failed to cooperate he would inform the prosecutor that she was "stubborn or

hard-headed." Based on this scenario the court of appeals found the agent's statements were patently coercive rendering her confession involuntary. Tingle had repeatedly maintained her innocense and was noticeably shaken by the interview. In contrast, Chaison's statements and responses appear to have been "the product of a rational intellect and a free will," and not coerced. See Blackburn v. Alabama, 361 U.S. 199, 208 (1960).

       The instant case does not fit the pattern of an involuntary confession based on coercion by physical intimidation or psychological pressure. Chaison was not denied the opportunity to decided on her own whether to cooperate with the law enforcement officers. The "threat" of facing more criminal charges was predicated on what a future investigation might reveal. Transcript of Evidentiary Hearing, Docket No. 219, p.39, 40. She was not told to cooperate or she would face more charges. This is no different than in plea bargaining with a prosecutor who may bring additional (valid) charges against a defendant who does not plead guilty. I have considered the defendant's argument that subtle psychological coercion suffices to render a confession involuntary. However, I am satisfied that the government has proved that Chaison's statement's were voluntary by a preponderance of the evidence. Telling the suspect that her cooperation may be taken into consideration by a prosecutor is not improper. See United States v.

Guerrero, 847 F.2d 1363 (9th Cir. 1988); Tingle, 658 F.2d at 1336, n.5.  There is no evidence in the record that Chaison was accused of lying to the officers .

Chaison also seeks suppression because the federal agent did not record her interview.  SA Schmidt stated that it was not the practice of the federal agents to record interviews and therefore he chose not to do so.  The Ninth Circuit Court of Appeals has not required interviews or interrogations to be recorded for use in federal court although that court has from time to time strongly suggested that tape recordings would aid the fact-finder in determining what was said or not said during an interview.  In the absence of any federal authority requiring the federal agent to record the interview, the agent's choice not to record does not require suppression of the statements solicited from the defendant.

Chaison argues that the presence of Detective Dorr should have precipitated the application of Alaska State law requiring interrogations to be recorded.  I am not persuaded by that argument.  Detective Dorr was assisting the federal agent and there is no evidence that the federal agent was involved to circumvent state prosecution or state law.  Chaison was interviewed because she was arrested on a federal arrest warrant.

Chaison also complains about the absence of a written waiver of rights.  The evidence indicates that Chaison freely and willingly agreed to talk to the officers and there is no evidence of equivocation on her part about whether she waived her

rights. The written wavier form was not a prerequisite to the court finding a valid waiver of rights. The absence of a specific litany about waiving an attorney or "waiving rights" on the wallet card DEA-13A form is not dispositive of the waiver issue. The issue is whether under the totality of the circumstances Chaison knowingly and voluntarily waived her rights after the oral warnings, and prior to the interrogation. Based upon all of the evidence I find that the defendant waived her right to remain silent, her right to talk to a lawyer for advice before being questioned or to have a lawyer present with her and her right to request that the court appoint an attorney for her if she could not afford one.

       I find no implicit threat to cooperate or answer questions based upon the DEA agent taking Chaison to the DEA office for processing before taking her before a judicial officer. There is no evidence that Chaison felt intimidated by being taken to the DEA office immediately following her arrest. Nor is there any evidence that she ever gave consideration to whether the address of the DEA office was listed in the phone book. The absence of the DEA address in the white pages of the telephone book is irrelevant. There is no evidence to suggest that Chaison felt intimidated by her relative isolation in the security interview room at the government office.

       For the foregoing reasons the defendant's motion to suppress evidence lacks merit. **The motion should be denied. IT IS SO RECOMMENDED.**

DATED this 8th day of March, 2006, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Friday, March 17, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON, Thursday, March 23, 2006**.  The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).